# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS EASTERN DIVISION

| | | |
|---|---|---|
| RONALD W. CARYE,<br>MIRLAINE JEUNE and<br>CHARLES A. SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>LONG BEACH MORTGAGE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06CV10887<br><br>Honorable William G. Young<br><br>ORAL ARGUMENT REQUESTED |

## <u>MEMORANDUM IN SUPPORT OF LONG BEACH MORTGAGE COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND TO SEVER CLAIMS OF PLAINTIFFS JEUNE AND SMITH</u>

On August 9, 2006, Plaintiff Ronald W. Carye filed a First Amended Complaint that added two new Plaintiffs and changed the claims alleged in this lawsuit. As set forth below, the entire lawsuit should be dismissed under Rules 12(b)(6) and 21 of the Federal Rules of Civil Procedure for several separate and independent reasons:

- The claims by new Plaintiffs Charles A. Smith and Mirlaine Jeune should be severed because Messrs. Smith and Jeune are improperly joined in this lawsuit.
- Counts I and II should be dismissed for failure to state a claim because federal law prohibits the disclosures that Plaintiffs claim should have been made.
- Count III brought by Mr. Carye should be dismissed because Mr. Carye waived his right to rescind when he did not rescind within three days after the loan closing.

## BACKGROUND

### A. Facts Alleged in the First Amended Complaint.

On October 21, 2005, Plaintiff Carye obtained two loans from Defendant Long Beach Mortgage Company ("Long Beach"), secured by his residence at 35-37 Goodrich Road in Jamaica Plain, Massachusetts. (Cmplt. ¶¶4, 10.) Plaintiff Carye's loans were in the amount of $664,000 and $166,000. (Cmplt. Exs. A, B.)

On November 1, 2005, Plaintiff Jeune obtained two loans from Long Beach secured by his residence at [redacted] (Cmplt. ¶¶5, 16.) Plaintiff Jeune's loans were in the amount of $356,000 and $89,000. (Cmplt. Exs. M, N.)

On February 6, 2006, Plaintiff Smith obtained a loan from Long Beach secured by his residence at 51-53 Drowne Street in Cranston, Rhode Island. (Cmplt. ¶¶6, 18.) Plaintiff Smith's loan was in the amount of $192,000. (Cmplt. Ex. W.)

Each Plaintiff signed a 1-4 Family Rider/Assignment of Rents ("Rider") in connection with their loans. (Cmplt. Exs. E, F, Q, R, Y.)

### B. Procedural History.

Plaintiff Carye filed this lawsuit on May 19, 2006. In the original complaint, Mr. Carye brought a single claim – purportedly on behalf of a class of all similarly situated persons – alleging that the Rider created a security interest in real property that was not disclosed on the Truth In Lending Act ("TILA") Disclosure Statements provided by Long Beach to Mr. Carye in violation of 15 U.S.C. § 1638 and 12 C.F.R. §§ 226.17-226.18.

Long Beach moved to dismiss (making substantially the same arguments set forth in Section II below). Shortly after Mr. Carye responded to Long Beach's motion to dismiss, he sought and obtained leave to file the First Amended Complaint that is at issue here.

In the First Amended Complaint, Mr. Carye does not bring a TILA claim. Instead, he and Plaintiff Jeune allege that the Riders violate the Massachusetts Consumer Cost Disclosure Act ("CCCDA") (Count II). (Cmplt. ¶¶30-31). Plaintiffs Carye and Jeune purport to bring this claim on behalf of a class of persons who obtained mortgages secured by real estate containing one or two dwelling units located in Massachusetts. (Cmplt. ¶¶32-38). Plaintiff Smith does not join in Count II.

Plaintiff Carye also asserts an individual claim for rescission (Count III). Mr. Carye alleges that Long Beach failed to indicate the date by which the right to cancel must be exercised, and therefore, his time within which to rescind extended beyond the three-day period. (Cmplt. ¶41). Plaintiff Carye further alleges that "[t]he failure of the Defendant Long Beach to respond to the notice of rescission is a separate violation of 15 U.S.C. § 1640 (a)." (Cmplt. ¶42).

Plaintiff Smith is the only plaintiff who brings Count I based on Long Beach's alleged failure to include in the TILA disclosure the security interest allegedly created by the Rider. Mr. Smith purports to bring this claim on behalf of all persons who obtained a residential mortgage loan secured by real estate containing one or two dwellings located outside the state of Massachusetts. (Cmplt. ¶44.)

## ARGUMENT

### I. PLAINTIFFS SMITH AND JEUNE SHOULD BE SEVERED BECAUSE THEY ARE IMPROPERLY JOINED PARTIES.

Because Plaintiff Carye has improperly joined Plaintiffs Smith and Jeune, Rule 21 of the Federal Rules of Civil Procedure requires that Plaintiffs Smith and Jeune be severed from this lawsuit.

Multiple plaintiffs are permitted to join in the same litigation under only two circumstances. First, multiple plaintiffs must be joined when "(1) in the person's absence

complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. Pro. 19(a).

Here, the only overlapping claim is Count II (brought by Plaintiffs Carye and Jeune), and Plaintiffs cannot seriously argue that the requirements of Rule 19 are met with respect to Count II. As for Plaintiff Smith, he and Mr. Carye do not even seek relief under the same counts.

Second, a plaintiff may be permissibly joined if "they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or services of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. Pro. 20(a).

Here, Plaintiffs Smith and Jeune are not suing jointly or severally with Plaintiff Carye. In fact, Plaintiffs Carye and Jeune do not join in Plaintiff Smith's claim, but rather assert their own independent claim. Further, Plaintiffs are not asserting rights arising out of the same transaction or occurrence. As alleged in the Complaint, Plaintiffs Carye, Jeune and Smith each obtained individual loans from Long Beach. Plaintiffs Carye, Jeune and Smith obtained their respective loans at different times, for different amounts, and secured their loans with different property. When such differences exist, a court will not find that the claims arise from the same transaction or occurrence. *See Abdullah, et al. v. Acands, Inc., et al.*, 30 F.3d 264, 266, 268 (1st Cir. 1994) (finding improper joinder where joinder will require "individual determinations with respect to each plaintiff"); *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (holding that in a products

liability action, plaintiffs' claims did not arise from the same transaction or occurrence where the "automobiles were purchased at different times, were driven differently, and had different service histories"); *Foster v. Murphy*, 211 F. Supp. 2d 354, 356 (D. Mass. 2002) ("Bringing together in one case claims based on a sequence of occurrences rather than occurrences on a single date, and involving different participants and witnesses, is likely to impede thorough understanding.")

In short, Plaintiffs Jeune and Smith do not meet any of the joinder requirements set out in Rules 19 and 20 of the Federal Rules of Civil Procedure. Accordingly, the claims of Plaintiffs Smith and Jeune should be severed from this lawsuit.

## II. ALL COUNTS SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.[1]

### A. Counts I and II Should Be Dismissed Because the 1-4 Family Rider Creates Incidental Interests that Cannot be Disclosed.

Plaintiffs fail to state a claim upon which relief can be granted under Counts I and II because the Riders attached to Plaintiffs' Complaint create only incidental interests, and Regulation Z prohibits lenders from disclosing incidental interests.[2]

[1] In ruling on a 12(b)(6) motion to dismiss, the Court takes as "true the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Rodrigues v. Members Mortgage Co., Inc.*, 323 F. Supp. 2d 202, 205 (D. Mass. 2004), *quoting Coyne v. City of Somerville*, 972 F.2d 440, 442-43 (1st Cir. 1992). Nonetheless, a Court will grant a 12(b)(6) motion to dismiss when the plaintiff has not sufficiently stated a claim for a TILA violation. *Id.* at 207.

[2] Regulation Z applies equally to both Counts I and II because the CCCDA was "closely modeled" after TILA. *Mayo v. Key Fin. Serv., Inc.*, 678 N.E.2d 1311, 1313 (Mass. 1997); *Hart v. GMAC Mortgage Corp.*, 246 B.R. 709, 738 (D. Mass. 2000); *see also Brown v. Fin. Enter. Corp.*, 188 B.R. 476, 484 (D. Mass. 1995) (CCCDA closely mirrors both TILA and Regulation Z). Indeed, TILA and CCCDA must be interpreted the same or lenders could be whipsawed between the disclosure (or non-disclosure) requirements of TILA and conflicting requirement of CCCDA.

**1. Regulation Z prohibits lenders From disclosing incidental interests.**

Under TILA, lenders are required to provide a disclosure statement advising the borrower "that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type." 15 U.S.C. § 1638(a)(9). However, Regulation Z creates a category of "incidental interests" – including but not limited to "accessions, additions, fixtures," and "interests in after-acquired property" – that are expressly excluded from the definition of "security interests" that must be disclosed under TILA. 12 C.F.R. § 226.2(a)(25); *see also* 209 CMR 32.02 (1)(c) (CCCDA provision). "Security interest" is defined as

> an interest in property that secures performance of a consumer credit obligation and that is recognized by State or Federal law. *It does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after-acquired property.*

*Id.* (emphasis added) The Official Commentary to Regulation Z adds to this definition and provides that

> [t]he general definition of security interest excludes three groups of interests: incidental interests, interests in after-acquired property, and interests that arise solely by operation of law. *These interests may not be disclosed. . .*

12 C.F.R. § 226.2, Supp. 1, at 305 (emphasis added).

Under this regulatory scheme, the lender is not only permitted to omit the excluded interests from the TILA disclosure statement – the lender is *required* to omit them.

**2. The Riders create only incidental interests.**

The key question, then, is whether the Riders create only incidental interests that *cannot* be disclosed. As set forth below, the Riders involve only incidental interests, and Long Beach therefore acted properly by excluding the items listed in the Riders from the TILA disclosures.

The Riders provide:

> **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

(Cmplt., Exs. E, F, Q, R, Y.)

Under Massachusetts law, a fixture is defined as "goods that have become so related to particular real property that an interest in them arises under real property law." M.G.L.A. 106 § 9-102(a)(41). The definition of a fixture under Rhode Island law is similar. *See* RI ST Sect. 6A-2.1-309(1)(a) ("Goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law.")[3] Long Beach submits that this Court can and should determine as a matter of law that the items in the Rider fall within these definitions. The list of items in the Rider all are subject to, and limited by, the phrase, "now or hereafter attached to the Property." The list of items enumerated in the Rider begins with "building materials and

---

[3] This Court should look to the state law definition of "fixture" as it is not defined by TILA, Regulation Z or the Rider. 12 C.F.R. 226.2(b)(3); *see also Leon v. Washington Mutual Bank, F.A.*, 164 F. Supp. 2d 1034, 1038 (N.D. Ill. 2001) ("Although neither TILA nor Regulation Z defines 'fixture,' Regulation Z provides that any term not defined by the regulations should be construed in accordance with state law or the contract. 12 C.F.R. 226.2(b)(3). Because, in this case, the contract does not define 'fixture,' the court looks to Illinois law to define 'fixture.'")

appliances." Building materials are fixtures under Massachusetts law because they become related to and a part of the real property. Appliances – and especially the appliances listed – also are installed, and therefore relate to the real property. Goods that are used "for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light," are also related to the real estate and are therefore fixtures to that real property, as are "security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings." Because each of the items described in the Rider is properly considered a fixture, and since fixtures are expressly prohibited from disclosure under the TILA regulations, Long Beach acted properly in excluding the Rider from the TILA disclosure.

Long Beach suspects that Plaintiffs will lean heavily on another district court's ruling in *Leon v. Washington Mutual Bank, F.A.*, 164 F. Supp. 2d 1034 (N.D. Ill. 2001), in arguing that whether the Rider involves "fixtures" is a factual question that cannot be resolved at the pleading stage.[4] In *Leon*, the court determined that whether an identical Rider created a "fixture" could not be resolved at the pleading stage because, under Illinois Law, a good becomes a fixture only when a consumer intends to permanently attach it to realty, which the court characterized as a fact question. *Id.* at 1038.

Long Beach respectfully submits that – in addition to the fact that the *Leon* court's ruling is not binding on this Court – the *Leon* court's ruling was in error. First, the fact that

---

[4] Plaintiffs also may rely on the district court ruling in *Navara v. Long Beach Mortgage Company, et al.*, No. 05 C 864, slip op. at 6-8 (N.D. Ill. Jan. 26, 2006), attached hereto at Exhibit A. However, the *Navara* court relied on the *Leon* decision in denying Long Beach's motion to dismiss. The *Leon* opinion is distinguished and explained in this Motion.

the Rider limits fixtures to those items "now or hereafter attached to the Property" removes the intent component from consideration. Further, under both Massachusetts and Rhode Island law, intent is not included in the legal definition of fixture, as it is in Illinois. *See* 30 ILCS 105/24.8 (A fixture is defined as "any item of tangible personal property which is acquired with the *intention* of attaching it to real estate so that it becomes a part thereof.") (emphasis added) Therefore, in this case, it makes no sense from a standpoint of judicial efficiency to require Long Beach to establish, through deposition or otherwise, that, for example, goods that are used "for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light" are intended to be permanently attached to the property.

In addition, Long Beach submits that the *Leon* court erred by focusing solely on whether the Rider was limited to fixtures – and failing to consider whether the Rider involved "accessions," "additions" and "after-acquired property."[5] 12 C.F.R. § 226.2, Supp. 1 at 305.

Although the terms "accession," "addition" and "after-acquired property" are not defined by Regulation Z, each has a commonly accepted meaning within which the items enumerated in the Rider falls. "Accession" means the "[a]rtificial improvement or natural growth of a property," *see* Oxford English Dictionary 13 (1993 ed.) (*Law* definition), or "goods that are physically united with other goods in such a manner that the identity of the original goods is not lost." M.G.L.A. 106 § 9-102(a)(1). As with the term "fixture," there is no intent component in determining whether an item is an "accession." Under the terms of the Rider, in order for *any*

[5] Without violating the well-established "interpretative principle that 'every word or provision of a statute must, if possible, be given some effect,'' the terms "accessions," "additions," and "after-acquired property" cannot be construed as synonyms of the term "fixture." *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 575 (7th Cir. 2001), *quoting Cent. States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942 (7th Cir. 2000). Indeed, such an interpretation would, without any justification, render the terms "accessions," "additions" and "after-acquired property" mere surplusage. *Id.*

interest to arise, the goods must be "now or hereafter attached to the Property." Again, Long Beach submits that this Court can and should conclude as a matter of law that the items enumerated in the Rider are "accessions," and therefore prohibited from disclosure.

Similarly, the term "additions" "[i]mplies physical contact, something added to another," or a "[s]tructure physically attached to or connected with building itself." *See* Black's Law Dictionary 38 (6th ed. 1990). The goods provided for in the Rider are also properly classified as "additions" because they are all goods which must be — under the express terms of the Rider — "physically *attached* to or connected with [the] building itself," regardless of whether the owner intends to attach them permanently.

Finally, "after-acquired property" refers to the "property of [a] debtor which is acquired after a security transaction covering property already owned is perfected." *Id.* at 61. Necessarily, any goods that are attached to the property, covered by the Rider and acquired after the security transaction covering the property already owned is perfected, constitute "after-acquired property."

In sum, Long Beach submits that this Court can and should find as a matter of law that the items listed in the Rider are "incidental interests" that cannot be disclosed under the TILA regulations, and dismiss Counts I and II.

### B. Count III Should Be Dismissed Because Plaintiff Carye Waived his Right to Rescind.

This Court should dismiss Count III for failure to state a claim upon which relief can be granted because Plaintiff Carye waived his right to rescind because he did not do so within the allowed time.

Plaintiff Carye's individual claim for rescission is based on Long Beach's alleged failure to disclose the date by which his right to cancel must be exercised. (Cmplt. ¶41, Exs. K, L.)

However, contrary to the allegations in the Complaint, on October 21, 2005, Plaintiff Carye signed and acknowledged the receipt of two Notices of Right to Cancel that are dated. (The Notices attached hereto as Exhibits B and C.[6]) Both Notices clearly and conspicuously state that Plaintiff Carye had three days within which to exercise his right to cancel. *Id.* Plaintiff Carye's rescission claim therefore fails as a matter of law because Plaintiff Carye did not exercise his right to cancel within the three-day period. 15 U.S.C. § 1635(a). Accordingly, this Court should dismiss Count III, with prejudice.

[6] Where, as here, a plaintiff relies on a particular document as the basis of his claim, the defendant may attach the document to its motion to dismiss without converting the motion to one for summary judgment. *Fudge, et al. v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988); *Christensen v. Kingston School Committee*, 360 F. Supp. 2d 212, 215 (D. Mass. 2005). In the event that this Court does convert Long Beach's Motion to Dismiss Count III to a Motion for Summary Judgment, Long Beach respectfully requests that this Court grant summary judgment as to Count III. Counsel for Long Beach provided these documents to Plaintiffs' counsel on August 30, 2006 and requested that Plaintiff Carye withdraw Count III. He refused to do so.

**CONCLUSION**

For the foregoing reasons, Defendant Long Beach Mortgage Company respectfully requests that this Court sever the claims of Plaintiffs Smith and Jeune because they are improperly joined parties. Long Beach further requests that this Court grant its Motion to Dismiss and dismiss Plaintiffs' Complaint, with prejudice.

Respectfully submitted,

LONG BEACH MORTGAGE COMPANY

s/ R. Bruce Allensworth

R. Bruce Allensworth (BBO #01582)
(ballensworth@klng.com)
Brian M. Forbes (BBO #644787)
(bforbes@klng.com)
Ryan M. Tosi (BBO #661080)
(rtosi@klng.com)
KIRKPATRICK & LOCKHART LLC
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

Matthew M. Neumeier
(mneumeier@jenner.com)
Scott T. Schutte
(sschutte@jenner.com)
Bethany K. Biesenthal
(bbiesenthal@jenner.com)
*Admitted Pro Hac Vice*
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-3950

Dated: September 7, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non registered participants by first-class mail, on this 7th day of September, 2006.

Christopher M. Lefebvre, Bar #629256
lefeblaw@aol.com
CLAUDE LEFEBVRE
CHRISTOPHER M. LEFEBVRE, PC
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (Facsimile)

s/ R. Bruce Allensworth
R. Bruce Allensworth

# EXHIBIT A

Order Form (01/2005) Case 1:05-cv-00864 Document 31 Filed 01/26/2006 Page 1 of 8

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 05 C 864 | DATE | 1/26/2006 |
| CASE TITLE | Guadalupe Navara vs. Long Beach Mortgage, et al. | | |

DOCKET ENTRY TEXT

For the reasons stated below, the Defendants' motion to dismiss (D.E. 15) is respectfully denied.

Mark Filip

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiff Guadalupe Navara ("Plaintiff or "Ms. Navara") filed suit against Defendants Long Beach Mortgage Company ("Long Beach"), Washington Mutual Bank, F.A. ("WAMU"), New Millennium Mortgage Corporation ("New Millennium"), and Rogelio A. Astudillo, a/k/a Roger Astudillo ("Astudillo"). Plaintiff seeks (i) to rescind a real estate mortgage and to recover damages for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), as amended by the Home Ownership & Equity Protection Act of 1994, 15 U.S.C. §§ 1602(aa) and 1639 ("HOEPA) and implementing federal regulation, 12 C.F.R. part 226 ("Regulation Z") (Count I), (ii) to recover damages for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* (the "Consumer Fraud Act") (Count II), and (iii) to recover damages for alleged failure to comply with the TILA disclosure requirement governing security interests in personal property (Count III). (D.E. 1 (the "Complaint").)

Long Beach and WAMU are named as defendants in Count I. Long Beach, New Millennium and Astudillo are named as defendants in Count II. Long Beach is named as defendant in Count III. Long Beach and WAMU moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E. 15.) For the reasons stated below, the motion is respectfully denied.

### I. Background

The following facts are taken from the Complaint. The Court accepts the allegations as true, as precedent instructs, for present purposes. The Court takes no position on whether any of the allegations are actually well-founded.

On April 24, 2004, Plaintiff obtained a $50,000 mortgage loan (the "Loan") from Long Beach, which was secured by her residence. (D.E. 1 ¶ 8.) Plaintiff alleges that she obtained the loan to refinance prior

STATEMENT

debts incurred for personal, family or household purposes. (*Id.* ¶ 9.) The following documents are attached to the Complaint: the note (*id.* Ex. A), the mortgage (*id.* Ex. B), the HUD-1 settlement statement (*id.* Ex. C ("HUD-1 Statement")), the TILA financial disclosure statement (*id.* Ex. D ("TILA Disclosure")), the notice of right to cancel (*id.* Ex. E), the itemization of amount financed and prepaid finance charge (*id.* Ex. F), and the 1-4 family rider to the mortgage (*id.* Ex. G ("1-4 Family Rider")). (*Id.* ¶ 10.) Plaintiff has been directed to make payments under the Loan to WAMU, who claims a right to payment under the note and mortgage. (*Id.* ¶ 23.)

Plaintiff applied for the loan through New Millennium, a mortgage broker. (*Id.* ¶ 11.) Astudillo was the loan originator at New Millennium who took Plaintiff's loan application and presented it to Long Beach. (*Id.* ¶ 12.) New Millennium and Astudillo received the following compensation for brokering the loan: (i) a loan origination of fee of $800.00, listed on line 801 of the HUD-1 Statement, (ii) a processing fee of $500.00, listed on line 810 of the HUD-1 Statement, and (iii) $8,000 to ACS, meaning Astudillo Consulting Services, listed on line 1305 of the HUD-1 Statement as a $26,000 payment to "ACS." (*Id.* ¶ 13.) Plaintiff claims Astudillo returned to her $18,000 of the $26,000 payment. (*Id.*) Plaintiff alleges that the $8,000 was retained by New Millennium and/or Astudillo as part of the compensation for brokering the loan, but was not listed on the TILA Disclosure. (*Id.* ¶¶ 13, 16 and Ex. F.)

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations generously, and view the allegations in the light most favorable to plaintiffs. *See, e.g., Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal for failure to state a claim is not appropriate unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III. Discussion

### A. Counts I and II –TILA, HRHLA, and The Consumer Fraud Act

Count I alleges that the TILA Disclosure "grossly misstated the amount financed, finance charge and annual percentage rate, in that the compensation to New Millennium and Astudillo was not fully included in the finance charge and annual percentage rate, in violation of 15 U.S.C. § 1638 and 12 C.F.R. § 226.18 " and that "no attempt was made to comply with the advance disclosure requirements of HOEPA." (D.E. 1 ¶¶ 25-26.) Plaintiff claims that she is entitled to the remedy of rescission under TILA (*see* 15 U.S.C. § 1635) and Regulation Z (*see* 12 C.F.R. § 226.23) against Long Beach and WAMU, as well as statutory damages against Long Beach for the alleged disclosure violations.

Count II alleges violations of the Consumer Fraud Act against Defendants Long Beach, Millennium and Astudillo. (D.E. 1 ¶¶ 32-38.) Plaintiff claims that these Defendants "knowingly" violated the Illinois High Risk Home Loan Act, 815 ILCS § 137/1 *et seq.* ("HRHLA")—by omitting the payment to ACS from the finance charge, by financing broker compensation in excess of 6%, and by failing to provide special advance disclosures required by the HRHLA—and in so doing, violated the Consumer Fraud Act. (*Id.* ¶¶ 33-

Dbtf!2;16.dw11975!!!!!Epdvnfou!47!!!!!Gjmfe!12087081177!!!!!Qbhf!4!pg9

**STATEMENT**

34.); *see* 815 ILCS 137/135(b) ("Any knowingly violation of this Act [HRHLA] constitutes a violation of the Consumer Fraud [Act]."). Plaintiff also claims that these Defendants violated § 2 of the Consumer Fraud Act, 815 ILCS 505/2, by misrepresenting the finance charge, the amount financed and the annual percentage rate and by causing such misrepresentations. (*Id.* ¶ 35.)

Defendants WAMU and Long Beach contend that the claim against WAMU should be dismissed because WAMU was not the originator of the Loan, and thus did not make the TILA Disclosure. (D.E. 15 ¶ 3.) They further contend that Counts I and II should be dismissed on the ground that Plaintiff's allegation that she paid an additional $8,000 broker fee conflicts with the HUD-1 Statement, which was attached to the Complaint and signed by Plaintiff under penalty of perjury. (*Id.* ¶ 4.) In this regard, the Defendants further argue that Plaintiff "does not (and cannot) allege that Long Beach was aware of the undisclosed [$8,000 broker] fee," and thus Long Beach cannot be held liable under TILA or HRHLA. (*Id.*)

**1. WAMU Is A Necessary Party**

The Court first addresses a threshold issue—whether WAMU should even be included as a defendant with respect to Count I. WAMU argues that it is not a proper party, while Plaintiff contends that WAMU is properly joined as a necessary party under Fed. R. Civ. P. 19.

"The purpose of Rule 19 [of the Federal Rules of Civil Procedure] is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Murry v. Am.'s Mortgage Banc, Inc.*, No. 03 C 5811, 2004 WL 1464584, *5 (N.D. Ill. June 29, 2004) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). Rule 19 furthers several interests, including the public interest in preventing multiple and repetitive lawsuits, the parties' interest in obtaining complete and effective relief in a single action, and absent parties' interest in avoiding the potential prejudicial effect of decisions rendered without their participation. *See, e.g., Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982); *see also Murry*, 2004 WL 1464584 at *5 (to determine whether a party is necessary, courts consider whether if, in the putative necessary party's absence, the party "will be prejudiced or the already existing parties will be subjected to multiple or inconsistent obligations" ) (internal citation omitted). To that end, Rule 19 sets forth two situations in which it is necessary to join a party if feasible: (i) where complete relief cannot be given to the current parties without the absent party being in the case; and (ii) where the outside party's interests will be prejudiced or the current parties will be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *See* Fed. R. Civ. P. 19(a); *accord, e.g., Hashop v. Fed. Home Loan Mortg. Corp.*, 171 F.R.D. 208, 211 (N.D. Ill. 1997) (Zagel, J.) (citing *Tillman v. City of Milwaukee*, 715 F.2d 354, 358 (7th Cir. 1983)). A party need only establish one of these criteria to establish that the outside party should be joined if feasible. *Hashop*, 171 F.R.D. at 211 (citing *Tillman*, 715 F.2d at 358).

In *Murry*, the plaintiff sought rescission of a mortgage loan that was serviced by the putative party and alleged that the third party/mortgage servicer claimed a right to payment on account of the loan. 2004 WL 1464584 at *6. The court concluded that this "is the kind of party that should be retained for Rule 19 purposes," reasoning that, if the mortgage loan were rescinded, then the mortgage servicer would cease to have any interest in the loan, and the plaintiff might wish to recover late fees or other penalties assessed and collected by the party. *Id.* Like the plaintiff in *Murry*, Plaintiff in the instant case seeks rescission of the Loan, and she alleges that WAMU services the Loan and claims a right to payments under the Loan. (D.E. 1 ¶¶ 23, 27-31; D.E. 18 at 13; D.E. 22 at 15.) If the Loan ultimately is rescinded, WAMU's interest in the Loan will terminate, directing that WAMU should be a party here. *Accord, e.g., United States*

**STATEMENT**

*ex. rel. Hall v. Tribal Development Corp.*, 100 F.3d 476, 479 (7th Cir. 1996) ("[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable") (internal quotation marks and citation omitted); *Hashop*, 171 F.R.D. at 200. In addition, in conjunction with any such rescission, Ms. Navara may attempt to recover late fees or other penalties assessed and/or collected by WAMU, which also militates in favor of joinder. *Accord, e.g., Murry*, 2004 WL 1464584 at *6. Accordingly, the Court finds that, at least at this stage in the litigation, WAMU is a necessary party under Rule 19. *Accord, e.g., id.*; *Hashop*, 171 F.R.D. at 212 (holding that a mortgage servicer should be joined if feasible under Rule 19(a) in an action by the borrowers seeking a declaration regarding their payment obligations). To the extent it so desires, WAMU may revive this objection at a more appropriate juncture—for example, through summary judgment proceedings.

**2. The HUD-1 Statement Does Not Fatally Undermine The Complaint**

The Court turns to the issue of whether the HUD-1 Statement attached to the Complaint precludes Plaintiff from asserting that she paid an undisclosed $8,000 broker fee–the gravamen of Counts I and II. The HUD-1 Statement shows that of the $50,000.00 Loan, $26,000.00 was paid to "ACS" at the loan closing. (D.E. 1 Ex. C at 2; *see also id.* (reflecting that payments also were made at closing to Capital One Bank and First Premier).) The Complaint alleges that "Astudillo then paid $18,000 of this amount to [P]laintiff" and "ACS" retained $8,000 as additional compensation for brokering the loan. (D.E. 1 ¶ 13.) The $8,000, however, is not appropriately disclosed as a broker fee. (*E.g., Id.* ¶¶ 13, 15-16.) Defendants WAMU and Long Beach claim that Ms. Navara signed the HUD-1 Statement, certifying that she "carefully reviewed the HUD-1 . . . [Statement] and to the best of [her] knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on [her] account or by [her] in this transaction" (*Id.* Ex. C at 2-3), and that therefore the case is subject to dismissal under Rule 12(b). For the reasons stated below, the Court respectfully disagrees.

To be sure, at a general level, it is a "well-settled rule" that when a written instrument contradicts allegations in the complaint to which it is attached, typically the exhibit "trumps the allegations." *Northern Indiana Gun & Outdoors Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("*NIGOS*") (citations omitted). But, precedent further instructs that this rule should not be applied without an appreciation for context and the nature of the plaintiff's theory of the case, such that statements in exhibits attached to a complaint should not always be seen to control over allegations made within the complaint. *See id.* at 455 (teaching that the district court applied the general rule "too broadly" and reversing the lower court). "Rather than accepting every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents." *Id.*; *accord, e.g., Gilbert v. Robb*, No. 95 C 1937, 1997 WL 361559 (N.D. Ill. 1997) ("Plaintiff does not as a matter of law adopt everything in these documents as true merely by attaching them to his complaint") (citing *Gant v. Wallingford Board of Ed.*, 69 F.3d 669, 675 (2d Cir. 1995)). In *NIGOS*, for example, the Seventh Circuit distinguished between documents attached to the complaint that form the basis of the claim, and documents attached for reasons unrelated to their truth. *Id.*, 163 F.3d at 455-56.

In the case *sub judice*, Plaintiff did not attach the HUD-1 Statement to show its truth or claim that everything in it was correct. In fact, Plaintiff attached the document to the Complaint for the opposite purpose; that is, she alleges that the HUD-1 Statement is the product of misrepresentation and concealment and that the document reflects the fraud. (*E.g.*, D.E. ¶¶ 13, 34, 35.) Put differently, Plaintiff has not plead

**STATEMENT**

herself out of court by attaching the HUD-1 Statement to the Complaint. The fact that Ms. Navara signed the document under penalty of perjury (albeit "to the best of [her] knowledge and belief") or did not allege any facts explaining the basis or origin of the $26,000 payment to "ACS" is of no moment. At this early stage in the litigation, Plaintiff need only satisfy federal notice pleading requirements. The Complaint alleges that Defendants failed to make certain required disclosures in violation of TILA and related federal statutes, and misrepresented certain information in violation of the Consumer Fraud Act. Except as required by Federal Rule of Civil Procedure 9(b), there is no requirement in federal suits of pleading the facts underlying a claim. *See Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Federal Rule of Civil Procedure 8 departs from old code-pleading practice and enables plaintiffs to dispense with the need to identify, and plead specifically to, each ingredient of their respective legal theories. *See, e.g., Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("All that's required to state a claim in a complaint filed in a federal court is a short statement, in plain (that is, ordinary, non-legalistic) English, of the legal claim . . . . The courts keep reminding plaintiffs that they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories."). Thus, dismissal under Rule 12(b)(6) is inappropriate.

Defendants' cases do not counsel in favor of a different result, at least at this stage of the proceedings. For example, in *Bell v. Lane*, 657 F. Supp. 815 (N.D. Ill. 1987), the complaint alleged that the prisoner-plaintiff was deprived of due process because a corrections committee refused to call a particular correctional officer as a witness; however, the committee report attached to the complaint established that the officer actually was a witness at the hearing in question. 657 F. Supp. at 817. As a result, *Bell* dismissed the complaint as frivolous because the exhibits attached to the complaint, which plaintiff did not allege to be suspect or otherwise defective, negated the allegations underlying the claim. Here, by contrast, Plaintiff is alleging, *inter alia*, that she was defrauded, and thus is not endorsing the veracity of the attached document (or certainly at least not endorsing the veracity of everything about the document). In this regard, although not necessary or essential to the Court's decision, the Court notes that Ms. Navara has proffered sworn affidavit testimony in which she stated that she never realized that the loan application states that she owes a debt to ACS (D.E. 22, Ex. J at 3), and further states that she never reported to anyone, including ACS and Mr. Astudillo, that she owed a debt to ACS or any company with a similar name. In any event, the allegations in the complaint, when read in context, do not dictate that, as a matter of law, the attached HUD-1 Statement necessarily defeats Plaintiff's claim. Dismissal under Rule 12(b)(6) is therefore inappropriate.

### 3. The Complaint Sufficiently Alleges Long Beach's Knowledge

Defendant Long Beach contends that it cannot be held liable for any TILA, HOEPA or HRHLA violations in the case *sub judice* because Plaintiff "does not (and cannot) allege that Long Beach was aware of the undisclosed [alleged $8,000 broker] fee." (D.E. 15 ¶ 4.) The Court respectfully disagrees. First, the Complaint *does* allege that Long Beach acted knowingly. *See* D.E. 1 ¶ 34 (alleging that Long Beach, among other Defendants, "knowingly violated the HRHLA by omitting the payment to 'ACS' from the finance charge, thereby concealing the fact that they were making a loan subject to the HRHLA, by financing broker compensation exceeding 6%, in violation of the HRHLA, and by failing to provide the special advance disclosures required by the HRHLA."); *see also id.* ¶ 35 (alleging that Long Beach violated the Consumer Fraud Act by misrepresenting the finance charge, amount financed and annual percentage rate on the loan). Long Beach may believe that this allegation is mistaken or baseless, but the allegation certainly has been made, and a central part of Plaintiff's theory is that there was a knowing violation. Moreover, given Plaintiff's allegation of a knowing violation, and given the intertwined nature of Plaintiff's theory of liability under TILA, the HRHLA, and the Consumer Fraud Act, the Court reads Count I of the Complaint to allege a knowing violation of TILA. *Accord, e.g., Graehling v. Village of Lombard*, 58 F.3d 295, 297 (7th Cir. 1995)

**STATEMENT**

("A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim."). For the sake of clarity, Plaintiff is respectfully requested to amend her Complaint to make clear that her allegations of a knowing violation reach to the TILA count. Furthermore, the Court expresses no view about the subsidiary question also briefed by the parties—and particularly the Defendants—namely, whether TILA covers a creditor's failure to disclose certain required factual information where the failure is the result of the creditor's lack of knowledge regarding such facts, or where a borrower-plaintiff was complicit in misleading the creditor-defendant. To the extent these issues prove relevant, they can be addressed after the Plaintiff has an opportunity to develop facts in support of her allegations. *Accord, e.g., Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (a court should only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

**B. Count III–Violation of TILA Claim Against Long Beach**

Count III alleges that Long Beach's failure to list on the TILA Disclosure the security interest it took in Plaintiff's personal property that is not part of the real estate by means of the 1-4 Family Rider constitutes a violation of TILA (*see* 15 U.S.C. § 1637) and Regulation Z (*see* 12 C.F.R. § 226.18). (D.E. 1 ¶¶ 40-42.) Long Beach contends that Count III should be dismissed on the ground that the 1-4 Family Rider creates merely "incidental interests," and Regulation Z prohibits disclosure of such interests. (D.E. 16 at 8-9 (*citing* 12 C.F.R. § 226.2, Supp. 1, at 305).)

Under TILA, lenders providing secured credit are required to disclose "a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type." 15 U.S.C. § 1638(a)(9); *see also* 12 C.F.R. § 226.18(m) (implementing regulation). Regulation Z creates a category of interests described as "incidental interests such as interests in proceeds, accessions, additions, fixtures . . .or interests in after-acquired property" that are expressly excluded from the definition of security interests that must be disclosed under § 1638(a); in fact, such interests should not be disclosed. 12 C.F.R. § 226.2(a)(25); *see also* 12 C.F.R. § 226.2, Supp. 1, at 305 ("The general definition of security interest excludes . . . incidental interests [and] interests in after-acquired property . . . . These interests may not be disclosed . . . .") At issue, then, is whether the interest Long Beach took pursuant to the 1-4 Family Rider (i) necessarily constitutes an incidental interest, in which case Regulation Z prohibits disclosure of such interest and the TILA Disclosure is sufficient, or (ii) whether the interest could be a security interest, in whole or in part, in which case TILA requires disclosure of the additional security interest and the TILA Disclosure is insufficient.

The 1-4 Family Rider at issue in this case provides, in relevant part:

> **A. Additional Property Subject to the Security Instrument.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and *goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to*, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the

**STATEMENT**

> property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

(D.E. 1, Ex. G. (emphasis added).)

*Leon v. Washington Mutual Bank, F.A.*, 164 F. Supp. 2d 1034 (N.D. Ill. 2001) (Alesia, J.), is on all fours here. *Leon* rejected a defendant's motion for judgment on the pleadings under Rule 12(c), concerning the issue of whether rider language identical to the language in the 1-4 Family Rider in the instant case necessarily created an incidental interest as opposed to a security interest. *Id.*, 164 F. Supp. 2d at 1038. The court specifically analyzed whether or not the rider added "fixtures" to the property subject to the security instrument, which constitute mere incidental interests for purposes of TILA and Regulation Z. *Id.* at 1038; *see also* 12 C.F.R. § 226.2(a)(25). Because neither the contract, nor TILA and its accompanying regulations define the term "fixture," the *Leon* court looked to Illinois law to define the term. *Id.* The court concluded that, of the three factors Illinois courts use to determine whether an item constitutes a fixture—"(1) the actual annexation of that item to the realty; (2) the application of the item to the use or purpose for which the land is appropriated; and (3) the intention to make the item a permanent accession to realty"—intent was the most important factor. *Id.* (citing, *inter alia*, *A and A Market, Inc. v. Pekins Ins. Co.*, 713 N.E.2d 1199, 1202 (Ill. App. Ct. 1999)). The court found that the rider, "read as a whole, disregards the critical favor of intent upon which Illinois fixture law is focused." *Id.*, 164 F. Supp. 2d at 1038. The court observed that language in the rider disregards the borrower's intent to permanently attach the building materials, appliances and goods to the realty and therefore cannot be limited to fixtures. *Id.* at 1038-39. The court ultimately refused to grant the defendant judgment on the pleadings because it could not conclude as a matter of law that the rider was limited to fixtures, as the defendant contended. *Id.* In reaching this conclusion, *Leon* cited, *inter alia*, *Williams v. Gelt Fin. Corp.*, 237 B.R. 590, 595-96 (E.D. Pa. 1999), which "concluded that the rider created a security interest in the consumer's personal property that extended beyond incidental interests to the real property." *Leon*, 64 F. Supp. 2d at 1039.

As stated above, the language in the 1-4 Family Rider is identical in all relevant aspects to the *Leon* rider and the Court can not find any basis to depart from the district court's decision in that case or from the district court's (and bankruptcy court's) identical conclusion in *Williams*. Long Beach fails to cite a single case finding that language similar to that of the 1-4 Family Rider at issue necessarily creates merely incidental interests as a matter of law. To the contrary, at least one other district court in this district has reached the same result as did *Leon*. *See Romaker, et al. v. Crossland Mortgage Corp.*, No. 94 C 3328, 1995 U.S. Dist. LEXIS 22252, *23-25 (N.D. Ill. Nov. 3, 1995) (Grady, J.); *see also People's v. Sebring Capital Corp.*, No. 1 C 5676, 2002 WL 406979, *3-5 (N.D. Ill. Mar. 15, 2002) (adopting *Leon* analysis for purposes of making class certification determination).

Finally, Defendant Long Beach argues that *Leon* erred by focusing solely on whether the rider was limited to "fixtures" and failed to consider whether the rider created "accessions," "additions, or "after-acquired property," which also are included in Regulation Z's description of incidental interests (*see* 12 C.F.R. 226.2, Supp. 1 at 305). (D.E. 16 at 11.) The Court believes that such an argument is misplaced. The 1-4 Family Rider includes "goods of every nature whatsoever" that are "located" on the property "now" and "hereafter" and defines these goods as "including, but not limited to" an extensive list of specific items. Addressing virtually identical language, *Romaker* states:

> The question before us therefore is whether the security interest outlined in the 1-4 Family Rider is an interest incidental to the general interest taken in the home that was purchased.

**STATEMENT**

> Although a great many of the things named in the rider are incidental interests, we are troubled by the expansive language of the security agreement. "Goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light" is an extremely broad description that could apply to nearly anything, including personal property which an ordinary consumer would not think of as incidental to his interest in a home. The language specifically refers to many household appliances which are not necessarily fixtures. Because the language includes personal property not purchased with the loan proceeds which is not incidental to the home itself, some disclosure of that interest should have been made. We are not certain that [the defendant] necessarily intended to acquire such a broad interest in the plaintiff's property, and, in fact, assume that it did not. However, even where the parties intend to limit language in a form security agreement, failure to either remove the overbroad language or acknowledge the full extent of the interest in the TILA statement constitutes a misdisclosure of the security interest in violation of TILA. *Teel v. Thorp Credit Inc. of Illinois*, 609 F.2d 1268, 1270 (7th Cir. 1979).

1995 U.S. Dist. LEXIS 22252 at *24-25. *Romaker* adds in an appended footnote that, "[t]he lack of limitation upon the language could render it applicable to furniture and other personal property which consumers generally expect to be able to take with them when they move to a new residence. Indeed, the language 'located in' suggests the security interest could apply to property not even belonging to the debtors." *Id.* at *24 n.5. Like the rider language in *Romaker*, the language in the 1-4 Family Rider is sweeping, and it contains no language suggesting that the property covered by the security instrument is limited to "accessions," "additions," or even "after-acquired property." Accordingly, the Court sides with the unanimous weight of district court caselaw cited by the parties and denies Long Beach's motion to dismiss Count III.

## IV. Conclusion

For all of these reasons, the motion to dismiss (D.E. 15) is respectfully denied.

# EXHIBIT B

# NOTICE OF RIGHT TO CANCEL

LENDER: LONG BEACH MORTGAGE COMPANY

DATE 10/21/05
LOAN NO. [redacted]
TYPE ADJUSTABLE RATE

BORROWERS/OWNERS RONALD W. CARYE

ADDRESS [redacted]
CITY/STATE/ZIP JAMAICA PLAIN, MA 02130
PROPERTY [redacted]
JAMAICA PLAIN, MA 02130

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1) The date of the transaction, which is 10/21/05 (DATE) ; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

LONG BEACH MORTGAGE COMPANY
100 WALNUT AVE, FLR 6
CLARK, NJ 07066

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 10/25/05 (DATE) (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

SIGNATURE _______________ DATE _______________

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

[signature] 10/21/2005

BORROWER/OWNER RONALD W. CARYE DATE | BORROWER/OWNER DATE

BORROWER/OWNER DATE | BORROWER/OWNER DATE

# NOTICE OF RIGHT TO CANCEL

LENDER: LONG BEACH MORTGAGE COMPANY

DATE 10/21/05
LOAN NO. [redacted]
TYPE ADJUSTABLE RATE

BORROWERS/OWNERS RONALD W. CARYE

ADDRESS [redacted]
CITY/STATE/ZIP JAMAICA PLAIN, MA 02130
PROPERTY [redacted]
JAMAICA PLAIN, MA 02130

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1) The date of the transaction, which is 10/21/05 (DATE) ; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

LONG BEACH MORTGAGE COMPANY
100 WALNUT AVE, FLR 6
CLARK, NJ 07066

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 10/25/05 (DATE) (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

SIGNATURE _______________ DATE _______________

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

BORROWER/OWNER RONALD W. CARYE — DATE 6/21/2005 — BORROWER/OWNER — DATE

BORROWER/OWNER — DATE — BORROWER/OWNER — DATE

# EXHIBIT C

# NOTICE OF RIGHT TO CANCEL

LENDER: LONG BEACH MORTGAGE COMPANY

DATE 10/21/05
LOAN NO. [redacted]
TYPE CONVENTIONAL FIXED

BORROWERS/OWNERS RONALD W. CARYE

ADDRESS [redacted]
CITY/STATE/ZIP JAMAICA PLAIN, MA 02130
PROPERTY [redacted]
JAMAICA PLAIN, MA 02130

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1) The date of the transaction, which is 10/21/05 (DATE) ; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

LONG BEACH MORTGAGE COMPANY
100 WALNUT AVE, FLR 6
CLARK, NJ 07066

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 10/25/05 (DATE) (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

SIGNATURE _______________ DATE _______________

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

[signature] 10/21/2005
BORROWER/OWNER RONALD W. CARYE DATE

BORROWER/OWNER DATE

BORROWER/OWNER DATE

BORROWER/OWNER DATE

# NOTICE OF RIGHT TO CANCEL

LENDER: LONG BEACH MORTGAGE COMPANY

DATE 10/21/05
LOAN NO. [redacted]
TYPE CONVENTIONAL FIXED

BORROWERS/OWNERS RONALD W. CARYE

ADDRESS [redacted]
CITY/STATE/ZIP JAMAICA PLAIN, MA 02130
PROPERTY [redacted]
JAMAICA PLAIN, MA 02130

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1) The date of the transaction, which is 10/21/05 (DATE) ; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

LONG BEACH MORTGAGE COMPANY
100 WALNUT AVE, FLR 6
CLARK, NJ 07066

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 10/25/05 (DATE) (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

SIGNATURE _______________ DATE _______________

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

[signature] 10/21/2005

BORROWER/OWNER RONALD W. CARYE — DATE — BORROWER/OWNER — DATE

BORROWER/OWNER — DATE — BORROWER/OWNER — DATE