UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSEPH C. MELFI : | |
| : | |
| v.    : | C.A. No. 08-024ML |
| : | |
| WMC MORTGAGE CORPORATION, : | |
| DEUTSCHE BANK NATIONAL : | |
| TRUST COMPANY, N.A., as Trustee of : | |
| MORGAN STANLEY ABS CAPITAL I : | |
| INC., Asset Backed Pass Through : | |
| Certificates Series 2006-WMC2 Under : | |
| the Pooling and Servicing Agreement : | |
| Without Recourse, WELLS FARGO : | |
| BANK and DOES 1-5 : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge.

This matter is before the Court on Defendants' Motion to Dismiss (Document No. 11) which, per Order of Chief District Judge Mary Lisi (Document No. 23) will be treated as a Motion for Summary Judgment because the record includes facts beyond those alleged in the Complaint. Rule 12(d), Fed. R. Civ. P. Defendants who have moved to dismiss are Wells Fargo Bank N.A. and Deutsche Bank National Trust Company, N.A., as Trustee of Morgan Stanley ABS Capital I, Inc., Asset Backed Pass Through Certificates Series 2006-WMC2 Under the Pooling and Service Agreement Without Recourse (collectively the "Defendants"). Plaintiff's Complaint alleges that Defendants provided him with insufficient and non-complying documentation when he borrowed money from them in 2006. The documentation in question, attached to Plaintiff's Complaint as Exhibit 1, is required by the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667. The disputed document is the Notice of Right to Cancel (the "Notice"), which provides a borrower with

a three-day window in which to rescind a loan, pursuant to 15 U.S.C. § 1635(a). Defendants assert that the Notice is legally sufficient as a matter of law, and ask that Plaintiff's Complaint be dismissed. For the reasons explained below, this Court recommends that the Complaint be DISMISSED in its entirety.

**Travel of the Case**

The dispute between these parties was the subject of an earlier Report and Recommendation issued on July 11, 2008. (Document No. 19). At that time, Defendants asserted that they provided Plaintiff with two copies of a fully completed and signed rescission Notice. (Document No. 2, Counterclaim ¶ 4). Defendants attached this completed version of the Notice to their Answer and Counterclaim. (Documents No. 2-3 and 2-4). Plaintiff disputed the authenticity of the Notice, maintaining that the Notice he actually received had several blanks that had not been filled in. (Document No. 5 at ¶ 2). In their Motion to Dismiss, Defendants urged this Court to evaluate the legal propriety of the version of the Notice submitted to the Court by Plaintiff. (Document No. 11). However, given the factual dispute as to whether or not Plaintiff had actually received a completed Notice, this Court recommended the denial of Defendants' Motion to Dismiss, along with a limited period of discovery to develop the factual record. (Document No. 19).

Both sides objected to the Report and Recommendation. (Documents No. 20 and 21). In their Objection, Defendants argued that, for purposes of ruling on their Motion to Dismiss, the Court should confine its analysis to Plaintiff's version of the Notice. (Document No. 20 at p. 2, n2). Plaintiff concurred. (Document No. 21 at p. 1). Consequently, Chief Judge Lisi again referred the matter to this Court with the direction that Defendants' Motion to Dismiss be treated as one for

Summary Judgment. Given that the parties have effectively stipulated to the material facts, this matter is now ready for review and recommendation.

**Standard of Review**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202 (1986). "Even in cases where elusive concepts such as motive or intent

are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)).  Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Factual Background**

In analyzing the merits of Defendants' Motion, the Court will rely upon Plaintiff's Supplemental Memorandum which outlines the factual background of this dispute. (Document No. 24 at ¶¶ 1-3).  Plaintiff obtained a loan from WMC Mortgage Corporation[1] to allow him to consolidate a number of personal and household debts.  The loan was secured by a mortgage on Plaintiff's home.  The closing on the loan took place on April 7, 2006, at which time Plaintiff signed a note in the principal amount of $190,000.00.  Plaintiff also signed a Truth in Lending disclosure statement, and received the copies of the Notice attached to his Complaint as Exhibit 1.  Plaintiff also asserts that:

> On or about December 19, 2007 and February 6, 2008, respectively, Plaintiff exercised his extended right to rescind the loan against WMC and the assignee under 15 U.S.C. § 1641(c) for violations of the TILA.

---

[1] WMC Mortgage Corporation is Defendants' predecessor-in-interest.

-4-

(Document No. 24 at ¶ 4).

### A. Borrower's Right to Rescind

As this Court explained in the earlier Report and Recommendation (Document No. 19), TILA provides a borrower with the right to rescind a loan that is secured by his or her principal dwelling within three business days of the loan's consummation – that is, three days after the closing of the loan or three days after the delivery to the borrower of certain material disclosures, whichever is later. 15 U.S.C. § 1635(a). TILA requires that the lender must "clearly and conspicuously" notify the borrower of the right to rescind the loan and of the method that right can be exercised. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1). The consequence of the lender's failure to provide this notice to the borrower is that the right to rescind the loan is extended from three days to three years. 12 C.F.R. § 226.23(a)(3). Not only is the omission of the notice a violation of TILA, but "a misleading disclosure" may also violate TILA's notice provisions. Barnes v. Fleet Nat'l Bank, 370 F.3d 164, 174 (1st Cir. 2004).

While TILA outlines the fundamentals of the "clear and conspicuous disclosure" requirement, the Code of Federal Regulations provides more detail in "Regulation Z," which applies to all credit transactions "in which a security interest is or will be retained or acquired in a consumer's principal dwelling." 12 C.F.R. § 226.23(a)(1). Section (b) of Regulation Z states:

> (1) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind...The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.

>    (iii)    How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
>    (iv)    The effects of rescission, as described in paragraph (d) of this section.
>
>    (v)    The date the rescission period expires.
>
>    (2)    Proper form of notice. To satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice.

There is no dispute between the parties that the Notice provided to Plaintiff was the "proper form" as described in part (2) above.

The Notice that Plaintiff received at the closing on April 7, 2006, is labeled across the top: "Notice of Right to Cancel." (Document No. 1-2). The heading includes the lender's name, address, the date of the closing, the loan number and type and the borrower's name and address. The Notice includes:

>    You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within **THREE BUSINESS DAYS** from whichever of the following events occurs **LAST**:
>
>    (1)    The date of the transaction, which is _____; or
>
>    (2)    The date you receive your Truth in Lending disclosures; or
>
>    (3)    The date you received this notice of your right to cancel.

(Document No. 1-2).

The next two paragraphs describe the ramifications of rescission. The form then explains how to cancel:

>>If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

Id. The bottom of the form is an acknowledgment of receipt of two copies of the Notice, with a blank signature line for the borrower to sign and date the form. This line, as well as the other blank lines indicated above were left incomplete on the instant Notice.

### B. Plaintiff's Attempts to Rescind the Loan

Approximately twenty months after the closing, on December 19, 2007, Plaintiff sent a notice of rescission to WMC Mortgage Corporation and to Morgan Stanley ABS Capital I Inc. (Document No. 1, ¶ 7). This request was ignored. Id. Plaintiff filed his Complaint on January 17, 2008. Subsequent to that filing, Plaintiff again attempted to rescind the loan on February 6, 2008. (Document No. 24, ¶ 4). Presumably, this rescission notice was sent to WMC Mortgage Corporation's assignee, Defendants herein.

### Discussion

Plaintiff alleges that the Notice supplied to him was incomplete and defective under TILA because it did not include the date of the transaction or the date of the expiration of the rescission period. Accordingly, he asserts that the period of time in which he is able to rescind the loan must be extended to three years. Defendants seek dismissal of the Complaint, arguing that the Notice serves the purpose of clearly informing Plaintiff of his right to rescind the loan, as well as informing him of how to go about the rescission. (Document No. 20).

### A. Palmer v. Champion Mortgage

The First Circuit recently addressed a somewhat similar factual scenario in Palmer v. Champion Mortgage, 465 F.3d 24 (1st Cir. 2006), which also involved a non-purchase money

mortgage covered by TILA.  The notice at issue in Palmer was worded much the same as Plaintiff's Notice in this case, but the blanks were filled in with the date of the transaction, as well as the final expiration date, three business days from the closing.  However, the notice in Palmer was not received by the borrower until several days after the final expiration date.  Approximately a year and a half later, the borrower attempted to rescind the loan.  When the lender failed to comply, the borrower sued, alleging that her notice violated TILA because its arrival by mail after the stated final date for rescission had expired was confusing.  In affirming the District Court's dismissal, the First Circuit ruled that the notice was neither confusing nor defective.  Id. at 28.

In reaching this conclusion, the First Circuit relied upon "the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer – a consumer who is neither particularly sophisticated nor particularly dense."  Id. at 28.  Thus, the question was not whether the borrower was truly confused by her Notice, but whether a borrower of average intelligence would be confused by the Notice.  The First Circuit noted further that the language of the Notice tracked the language of Regulation Z's model form, which was "at the very least, prima facie evidence of the adequacy of the disclosure."  Id. at 29.  The Court continued,

> Holding all parties to the plain language of disclosures aids the due enforcement of the statutory requirements by ensuring that any consumer subject to a misleading disclosure may bring suit against the creditor....The flip side of the coin, of course, is that any creditor who uses plain and legally sufficient language ought to be held harmless.

Id. at 29.

The First Circuit followed its decision in Palmer with Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12 (1st Cir. 2007).  Two sets of plaintiffs in Santos-Rodriguez refinanced their

mortgages through the same lender and received identical versions of the Notice of Right to Cancel form. Id. at 14. A year after closing these transactions, both sets of plaintiffs tried unsuccessfully to rescind their loans. Plaintiffs argued that the lender had provided them with a model disclosure form designed for general transactions, rather than the model form designed for same-lender refinancing transactions. Id. at 15. Plaintiffs argued further that the form they received was misleading as to their rescission rights. Id. at 16.

Pointing out that "the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice," the First Circuit rejected the "strict liability" view endorsed by some other circuits that have held that even a technical error constitutes a TILA violation. Id. at 16, n6. The Court buttressed its argument by citing amendments made by Congress to TILA in 1995, "intended by Congress to 'provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations.'" Id. at 17 (quoting McKenna v. First Horizon Home Loan Corp., 475 F.3d 418 (1st Cir. 2007)). The Court, affirming the dismissal of the complaint, held that the notices provided to plaintiffs clearly and conspicuously fulfilled the lender's disclosure obligation. Id. at 17.

    **B. Carye v. Long Beach Mortgage and Megitt v. Indymac Bank, F.S.B.**

The United States District Court for the District of Massachusetts recently rendered decisions in two similar TILA cases. The first was Carye v. Long Beach Mortgage Co., 470 F. Supp. 2d 3 (D. Mass. 2007). The borrower in Carye received disclosure notices identical to those received by Plaintiff in this case. Not only were the forms the same, but the notices also left the date of the transaction and the date of the final expiration for rescission blank. Id. at 9. Judge Young concluded that the notice would not be confusing to the average borrower and reasoned that:

> In Palmer, 465 F.3d at 28-29, the First Circuit held that a notice which failed to include a date certain for rescission was nevertheless clear and conspicuous because it contained an alternative provision providing for a three-day rescission period from the date of the receipt of the notice. Similarly, in this case, despite the fact that the Notices failed to include the dates of the transaction, this Court is persuaded as matter of law that the average person would be aware that the rescission period expired three days after receiving the Notices.

Id. at 9.

Earlier this year, in Megitt v. Indymac Bank, F.S.B., 547 F. Supp. 2d 56 (D. Mass. 2008), Judge Ponsor accepted a notice with the date of the transaction filled in, but the expiration date omitted. Id. at 57. Describing the omissions as "at most, unactionable technical violations," the Court stated:

> The import of the First Circuit's Palmer decision with regard to the purely technical omission in the document embodying the notice makes the ruling here compelling and inevitable. Judge Young's Carye decision sensibly applies Palmer to precisely the facts underlying this case.

Id. at 57.

This Court also believes that the Notice supplied to Plaintiff in the present case is sufficiently clear and conspicuous to provide the TILA-required information to a borrower of average intelligence and sophistication. The Notice is clearly directed at Plaintiff, containing his name, address and loan number. Significantly, the actual date of the loan's closing is printed at the top of the Notice, though not repeated on the blank line provided for the date of the transaction. The average borrower, having attended the closing and seeing the date printed at the top of the form, would understand that this is the date of the transaction and that he has only a three-day period to rescind the loan.

The final expiration date is "MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above." (Document No. 1-2). This date was also omitted on Plaintiff's form. But this date is always fully contingent on a variety of unavoidably uncertain factors, such as when the borrower actually receives the Notice. This uncertainty was illustrated by the facts of Palmer, where the date had been dutifully filled in by the lender, but the Notice went astray in the corporate mailroom or the post office and was not delivered to the borrower until several days after the final expiration date. The delay of receipt of the Notice in Palmer rendered the final expiration date inaccurate, but, nonetheless, was clear enough to notify the borrower of her rights. Likewise, Plaintiff herein could have looked at a calendar and counted the three days from the loan's closing, or the receipt of his Truth in Lending disclosures, or the receipt of his Notice of Right to Cancel, and determined his rescission period.

### C.    Bonney v. Washington Mutual Bank

Plaintiff relies heavily on the Report and Recommendation of Magistrate Judge Neiman in Bonney v. Washington Mut. Bank, Case No. 3:08-CV-30087-MAP (D. Mass. July 30, 2008). The lender's objection to Judge Neiman's Report and Recommendation is presently pending before District Judge Ponsor.

In Bonney, the borrower received a notice of right to cancel which, similar to this case, did not include dates on the blank lines for transaction date and rescission deadline. Although the facts in Bonney are arguably analogous to this case, this Court declines to follow Bonney for two primary reasons. First, the Report and Recommendation in Bonney is subject to a pending objection and conflicts with Judge Young's decision in Carye discussed above. This Court finds Judge Young's reasoning in Carye to be persuasive and consistent with existing First Circuit precedent.

Second, the factual record in this case is distinct from that in <u>Bonney</u>.  In <u>Bonney</u>, Judge Neiman recognized that the borrower "may well have been in a position to know the date of the transaction."  (Report and Recommendation at p. 7).  However, he specifically noted the absence of facts pled to "establish the omitted transaction date as a matter of law...."  <u>Id.</u>  Here, the Notice in question is dated April 7, 2006, and Plaintiff stipulates in his Supplemental Memorandum that the loan transaction took place on April 7, 2006 and that "on April 7, 2006 [he] received copies of his Notice of Right to Cancel in the form of <u>Exhibit 1</u> attached to the Amended Complaint."  (Document No. 24 at p. 2).  Thus, <u>Bonney</u> is factually distinct from this case.

**D.     <u>Reynolds v. E-Loan, Inc.</u>**

On November 14, 2008, District Judge Woodlock of the District of Massachusetts also weighed in on this TILA issue.  <u>See</u> <u>Reynolds v. E-Loan, Inc.</u>, C.A. No. 07-cv-11862-DPW, Memorandum and Order (D. Mass. Nov. 14, 2008).  In <u>Reynolds</u>, Judge Woodlock denied the lender's Motion to Dismiss the borrower's TILA claim challenging the adequacy of a Notice of Right to Cancel.  As in this case, there were two blank lines in the Notice for dates to be inserted which were left blank on the copies provided to the borrower.

In finding a TILA violation, Judge Woodlock reasoned that it was not "the mere failure of the [borrower] to f ill in every blank on the disclosure forms that rendered [them] inadequate." <u>Reynolds</u>, Memorandum and Order at p. 17.  Rather, he relied upon the fact that "the notice failed to provide sufficient information for the average consumer to determine the applicable rescission deadline readily by reference to the three enumerated events...."  <u>Id.</u> at pp. 17-18.  In <u>Reynolds</u>, the Notice's three enumerated events were (1) the "opening date" of your account; (2) the date of receipt of TILA disclosures; and (3) the date of receipt of the Notice of Right to Cancel.  Judge Woodlock

concluded that since the meaning of "the opening date of the account" would not be readily apparent to the average consumer, then "they could not reasonably be expected to count forward three business days from an unknown starting point." Id. at pp. 15-16.

This aspect of Judge Woodlock's rationale is critical and makes Reynolds distinguishable from this case. As noted above, the first enumerated event in the Notice in this case is "the date of the transaction" not the "opening date of the account." In dicta, Judge Woodlock indicated that this would be a substantive distinction. He stated:

> I note that a different result may be appropriate where the first enumerated event in a disclosure notice is "the date of the transaction," as it was in Palmer. I construe that phrase to refer to the date of the loan closing, an event for which the consumer will necessarily be present, either in person or through a designated agent. In this respect, the "transaction date" is analogous to the date of the consumer's receipt of the TILA disclosures or of the Notice of Right to Cancel. For each of those events, the average consumer will either have personal knowledge of the correct date or could easily discover it. The same is not true for "the opening date of the account."

Id. at pp. 16-17. I agree with Judge Woodlock's reasoning and thus conclude that the holding in Reynolds is limited to its specific facts and does not support a finding in favor of Plaintiff in this case.

**E.    The Meaning of Business Days**

Plaintiff directs the Court's attention to the fact that Regulation Z defines the term "business day" to include Saturdays, and argues that this would be unexpected and confusing to the average consumer. 12 C.F.R. 226.2(a)(6).[2] This argument is irrelevant to the present case. Had Plaintiff tried to rescind his loan on a Monday, following a Wednesday closing date, and had then discovered

---

[2] This argument was persuasive for the Court in Aubin v. Residential Funding Co., LLC, 565 F. Supp. 2d 392, 397 (D. Conn. 2008).

that his rescission rights had expired at midnight the previous Saturday, the Court's recommendation herein might be different. But the inclusion of Saturday as a business day, *vel non*, played no role in Plaintiff's decision to try to rescind his loan almost <u>two years</u> after his receipt of the disclosure Notice.

### Conclusion

For these reasons, this Court recommends that Defendants' Motion to Dismiss (Document No. 11) be GRANTED and Plaintiff's Amended Complaint be DISMISSED in its entirety.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within (10) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 19, 2008